**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 21-cv-0684-WJM-GPG

SANDRA STURM, and
TIMOTHY STURM and SANDRA STURM, as parents and next friends of their minor
child, HOLLY STURM

      Plaintiff,

v.

JOSEF WEBER a/k/a JOSEPH WEBER,
KRABLOONIK, INCORPORATED,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

Plaintiffs Sandra Sturm individually, and Sandra and Timothy Sturm as parents

and next friends of their minor child, Holly Sturm, ( collectively, "the Sturms") sue

Defendants Josef Weber and Krabloonik, Incorporated (jointly, "Defendants") for

negligence, negligent misrepresentation, and, in the alternative, premises liability

pursuant to the Colorado Premises Liability Act ("CPLA"), Colorado Revised Statutes

§13-21-115, for injuries sustained during a 2019 dogsledding accident in Snowmass

Village, Colorado.  (ECF No. 5.)  This matter is before the Court on Defendants' Motion

for Summary Judgment ("Motion") (ECF No. 31.)  Defendants make one argument—

because the Sturms released Defendants of all claims for negligence, Plaintiffs cannot

maintain this lawsuit as a matter of law.  (ECF No. 31 at 2.)  In support, Defendants

attach signed copies of Krabloonik's Participant Agreement, Release and Assumption of

Risk ("Participant Agreement") (ECF No. 31-1 at 3–4.)

Due to the early stage of the litigation at which the Motion was filed and the

purely legal basis of Defendants' argument, the record was not as robust as the Court

would normally see on a motion for summary judgment.  No doubt this in great part

reflects the fact that the Motion was filed prior to the close of discovery.  Given the legal

nature of Defendants' sole argument, and state of the record at the time the Motion was

filed, the Court exercises its discretion to construe the Motion as a motion directed to

the sufficiency of the factual allegations of Plaintiffs' operative complaint under Federal

Rules of Civil Procedure Rule 12(b)(6) ("Construed Motion").  For the reasons set forth

below, the Construed Motion is granted in part and denied in part.

## I. BACKGROUND[1]

Krabloonik is a recreational dogsled operation in Snowmass Village, Colorado.

(ECF No. 31 at 2.)  Krabloonik employs "mushers" to steer the dogsleds during the rides

it offers its customers.  (*See* ECF No. 31 at 1–2.)  Krabloonik's dogsleds are not

equipped with track-braking systems; instead, mushers are trained to use resistance

and counterbalance to steer and control the speed of Krabloonik's dogsleds.  (ECF No.

32 at 11; ECF 38-1 at 2.)  Josef Weber operated Sandra and Holly Sturm's dogsled on

March 11, 2019.  (ECF No. 31 at 3 ¶¶ 6–7.)

Prior to embarking on the dogsled ride with Weber, Sandra and Timothy Sturm

each signed a copy of Krabloonik's Participant Agreement.  (*See* ECF No. 31-1 at 3–4;

ECF No. 31-2 at 10.)  The parties agree that Sandra Sturm signed the Participation

Agreement on her own behalf.  (ECF No. 31 at 2.)  The parties disagree, however, on

---

[1] The following facts are undisputed unless attributed to a party or otherwise noted.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

whether the Participation Agreement signed by Timothy Sturm was properly signed on

behalf of Holly Sturm.  (*See* ECF No. 31 at 2; ECF No. 32 at 4.)

The Participant Agreement provides two spaces for signatures: one for

customers 18 years of age and over to sign for themselves, and one for parents or

guardians to sign on behalf of a minor.  (ECF No. 31-1 at 3.)  The section to be

completed on behalf of a minor provides a large space with instruction to "print [the]

minor's name]."  (*Id.*)  Holly Sturm's name does not appear on this line on either copy of

the Participant Agreement completed by the Sturms.  (*Id.* at 3–4.)  The form completed

by Timothy Sturm has "Timothy Whitney Holly" written at the bottom of the page on and

near the line provided for the signature of the minor's parent or guardian.  (*Id.* at 3.)

The Participant Agreement included the following exculpatory provisions:

> I hereby agree to release, indemnify, and discharge KKEN,[2]
> on behalf of myself, my spouse, my children, my parents, my
> heirs, assigns, personal representative and estate as
> follows:
>
> 1. I acknowledge that my participation in dog sled tour
>    activities entails known and unanticipated risks that
>    could result in physical or emotional injury, paralysis,
>    death, or damage to myself, to property, or to third
>    parties. . . .
>
> **The risks include, among other things:** . . . losing control
> of the dogs may result in collisions with other sleds and/or
> manmade and natural objects such as bridges, trees, rocks,
> cliffs, streams and other obstacles; . . . equipment failure; . . .
> I understand that sled dog touring is a wilderness activity
> that exposes me to all elements of the outdoors and natural
> surroundings.

---

[2] KKEN is defined as "Krabloonik Kennels, their agents, owners, officers, volunteers, participants, employees, and all other persons or entities acting in any capacity on their behalf" in the Participant Agreement.  (ECF No. 31-1 at 3.)

Furthermore, KKEN employees have difficult jobs to perform. They seek safety, but they are not infallible. They might be unaware of a participant's fitness or abilities. They might misjudge the weather or other environmental conditions. They may give incomplete warnings or instructions, and the equipment being used might malfunction.

2.      I expressly agree and promise to accept and assume all of the risks existing in this activity.  My participation in this activity is purely voluntary, and I elect to participate in spite of the risks.

3.      I hereby voluntarily release, forever discharge, and agree to indemnify and hold harmless KKEN from any and all claims, demands, or causes of action, which are in any way connected with my participation in this activity or my use of KKEN's equipment or facilities, **including any claims which allege negligent acts or omissions of KKEN.** . . .

**By signing this document, I acknowledge that if anyone is hurt or property is damaged during my participation in this activity, I may be found by a court of law to have waived my right to maintain a lawsuit against KKEN on the basis of any claim from which I have released herein.**

**I have had sufficient opportunity to read this entire document.  I have read and understood it, and I agree to be bound by its terms.** . . .

In consideration of _____ (print minor's name) ("Minor") being permitted by KKEN to participate in its activities and to use its equipment and facilities . . . I further agree to indemnify and hold harmless KKEN from any and all claims which are brought by, or on behalf of Minor . . . connected with such use or participation by Minor.

(ECF No. 31-1 at 3 (emphasis in original).)

According to his Musher Accident Report, Weber steered the dogsled into a rut, causing it to tip.  (ECF No. 32-12.)  When Weber attempted to level the dogsled, he fell

4

off, leaving Sandra and Holly Sturm on a runaway sled.  (*Id.*) Without Weber to break

and steer, the dogsled did not come to a stop until it collided with a tree.  (*Id.*)  Plaintiffs

claim that as a result of the collision, Holly Sturm suffered a broken leg that had to be

surgically repaired and Sandra Sturm injured her elbow.  (ECF No. 5 at 4 ¶¶ 22, 28.)

Per the Amended Complaint, Holly Sturm also suffers from PTSD, mental stress, and

anxiety as a result of the dogsledding incident.  (*Id.* at 4 ¶ 22.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a

cause of action for "failure to state a claim upon which relief can be granted."  The

12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded

factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at

Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a

motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state

a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must

be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but

also to protect the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169,

1178 (10th Cir. 2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded

complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

improbable, and that a recovery is very remote and unlikely.'"  *Id.* (quoting *Twombly*,

550 U.S. at 556).

**III. ANALYSIS**

In the Construed Motion Defendants argue that the Participation Agreement bars

all of Plaintiffs' claims.  Plaintiffs argue that dismissal is inappropriate for two reasons:

(1) under Colorado law, an exculpatory agreement cannot shield against willful and

wanton acts or omissions; and (2) the Participation Agreement is invalid under *Jones v.*

*Dressel*, 623 P.2d 370 (Colo. 1981).

**A.      Holly Sturm's Claims**

Timothy Sturm, as Holly Sturm's parent, is permitted to waive negligence claims

on her behalf.  *See* C.R.S. § 13-22-107(3) ("A parent of a child may, on behalf of the

child, release or waive the child's prospective claim for negligence.")  Therefore, the

Court agrees with Defendants that the lack of Holly Sturm's signature is irrelevant.

Notwithstanding this fact, the Court cannot find as a matter of law that the Participation

Agreement signed by Timothy Sturm is an effective release of his daughter's claims.

No name—let alone Holly's—appears in the clearly marked space provided to identify

the minor whose claims are being released, and neither party has explained to the

Court who "Whitney" is.  Therefore, the Court denies the Construed Motion with respect

to Holly Sturm's claims.

**B.      Sandra Sturm's Claims**

"Under Colorado law, 'exculpatory agreements have long been disfavored,' *B & B*

*Livery, Inc. v. Riehl*, 960 P.2d 134, 136 (Colo. 1998), and it is well-established that such

agreements cannot 'shield against a claim for willful and wanton conduct, regardless of

the circumstances or intent of the parties,' *Boles v. Sun Ergoline, Inc.*, 223 P.3d 724,

726 (Colo. 2010)."  *Brigance v. Vail Summit Resorts, Inc.*, 883 F.3d 1243, 1249 (10th

Cir. 2018).  "But claims of negligence are a different matter.  Colorado common law does not categorically prohibit the enforcement of contracts seeking to release claims of negligence."  *Espinoza v. Ark. Valley Adventures, LLC*, 809 F.3d 1150, 1152 (10th Cir. 2016).

"The determination of the sufficiency and validity of an exculpatory agreement is a question of law for the court to determine."  *Jones v. Dressel*, 623 P.2d 370, 376 (Colo. 1981).  Accordingly, the Colorado Supreme Court has instructed courts to consider the following four factors when determining the enforceability of an exculpatory agreement: "(1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language [collectively, the '*Jones* factors']."  *Id.*  An exculpatory agreement "must satisfy all four factors to be enforceable."  *Raup v. Vail Summit Resorts, Inc.*, 734 F. App'x 543, 546 (10th Cir. 2018).

       1.       <u>Willful and Wanton Conduct</u>

Plaintiffs argue that the exculpatory provisions of the Participation Agreement cannot be enforced in this instance because Plaintiffs' injuries are the result of Defendants' willful and wanton conduct.  (ECF No. 32 at 8.)  Defendants argue the Court cannot consider whether Defendants' conduct was willful and wanton because Plaintiffs have not properly pleaded such conduct in the Amended Complaint.  (ECF No. 31 at 12.)  Plaintiffs erroneously claim that they do not need to have pleaded willful and

wanton conduct for the Court to consider their arguments.[3]  (ECF No. 32 at 15–16; s*ee*

*Suddith v. Citimortgage, Inc.*, 79 F. Supp. 3d 1193, 1198 n.2 (citing *Jojola* 55 F.3d 488,

494 (10th Cir. 1995)).)  While Plaintiffs do not explicitly describe Defendants' conduct as

"willful and wanton" in the Amended Complaint (*see* ECF No. 5), the sufficiency of

Plaintiffs' pleading is determined by the presence (or lack) of facts rather than talismanic

phrases.  *See Schneider*, 493 F.3d at 1177.

      The Court has reviewed the Amended Complaint, in the light most favorable to

Plaintiffs, with an eye for allegations that might sufficiently plead willful and wanton

conduct.  Under Colorado law, "[w]illful and wanton conduct is purposeful conduct

committed recklessly that exhibits an intent consciously to disregard the safety of

others."  *Forman v. Brown*, 944 P.2d 559, 564 (Colo. App. 1996).  The Court finds only

one allegation that can fairly be characterized as pleading conscious disregard for the

safety of others.  In their Second Claim for Relief (Negligence – Krabloonik, Inc.),

Plaintiffs allege Defendant Krabloonik "put[] profit over safety by deliberately choosing to

continue dog sledding trips on unsafe terrain and in unsafe weather conditions."  (ECF

No. 5 at 8 ¶ 42.a.)  Though this allegation is relatively thin, the Court finds that when

considered in connection with the factual allegations relating to the icy terrain, lack of

snow, and obstacles on the dogsled track, it is sufficient to plead willful and wanton

---

[3] Plaintiffs also argue that, if the Court finds their pleading insufficient, they can amend under Rule 15.  However, Plaintiffs have not requested leave to amend.  Even if the Court construes this argument as a motion for leave to amend their complaint, Plaintiffs' mid-brief request directly violates D.C.COLO.LCivR 7.1(d)'s admonition that "[a] motion shall not be included in a response or reply to the original motion.  A motion shall be filed as a separate document."  It also contradicts the undersigned's more explicit instructions in his Revised Practice Standard III.B.  Therefore, the Court considers this argument no further.

conduct.  Therefore, Defendants' Construed Motion is denied with respect to Sandra

Sturm's Second Claim for Relief.

        2.        Validity of the Participation Agreement Under *Jones*

Defendants discuss each of the four *Jones* factors.  (ECF No. 31 at 3–11.)  In

their Response, Plaintiffs only address the fourth *Jones* factor and concede that "[f]or

recreational releases such as the one at issue here, the issue generally turns on the

final *Jones* factor."  (ECF No. 32 at 17.)  Given Plaintiffs' concession, the Court

concludes that the Participation Agreement satisfies the first three *Jones* factors, and

therefore the Court need only address the fourth factor.

Under the fourth factor, "[t]he inquiry should be whether the intent of the parties

was to extinguish liability and whether this intent was clearly and unambiguously

expressed."  *Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781, 785 (Colo. 1989).  The

Colorado Supreme Court has explained that "[t]o determine whether the intent of the

parties is clearly and unambiguously expressed, [a court may] examine[ ] the actual

language of the agreement for legal jargon, length and complication, and any likelihood

of confusion or failure of a party to recognize the full extent of the release provisions.'"

*Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465, 467 (Colo. 2004).

After carefully analyzing the Participation Agreement, the Court finds that it was

the intent of the parties to extinguish liability, and this intent was clearly and

unambiguously expressed.  The language in the Participation Agreement is not

overburdened with extensive or complex legal jargon, nor is the Participation Agreement

inordinately long (less than a page) or unusually complicated.  *See Lahey v. Covington*,

964 F. Supp. 1440, 1445 (D. Colo. 1996) (concluding that a release agreement of "just over one page" was "short").

Moreover, the Court finds that the organization of the Participation Agreement makes it highly unlikely that the exculpatory provisions could have been missed or reasonably misunderstood.  *See Chadwick*, 100 P.3d at 468.  The very top of the form reads, in bold font and all capital letters, "**PARTICIPATION AGREEMENT, RELEASE AND ASSUMPTION OF RISK**." (ECF No. 31-1 at 3.)  Sections of the Participation Agreement are written in bold font to draw the eye, including provisions highlighting the wide range of risks related to participation in the dogsled ride and releasing potential future claims alleging "negligent acts or omissions."  (*Id.*)  Immediately above Sandra and Timothy Sturm's signatures are two sentences whereby they acknowledged the opportunity to read the Participation Agreement in full and agreed that they had in fact read and understood it. (ECF No. 31-1 at 3–4.)  The Court therefore finds that, under the standard articulated by the Colorado Supreme Court in *Chadwick*, the exculpatory provisions of the Participation Agreement were clear and unambiguous.  *See Chadwick*, 100 P.3d at 467–68.

Plaintiffs maintain that the Participation Agreement is not enforceable because the provisions do not contain "specific language making reference to specific risks, specific activities, and specifically waiving personal injury claims based on the activity being engaged in."  (ECF No. 32 at 18 (citing *Wycoff v. Grace Church of the Assemblies of God*, 251 P.3d 1260, 1265 (Colo. App. 2010)).)  According to Plaintiffs, because the Participation Agreement does not explicitly reference the possibility of the precise

course of events Plaintiffs allege occurred,[4] the exculpatory provisions therein are

invalid. (ECF No. 32 at 18–22.)

Contrary to Plaintiffs' argument, Colorado law does not require "that an

exculpatory agreement describe in detail each specific risk that the signor might

encounter.  Rather, an exculpatory agreement bars a claim if the agreement clearly

reflects the parties' intent to extinguish liability for that type of claim."  *Squires v.*

*Breckenridge Outdoor Educ. Ctr.*, 715 F.3d 867, 873 (10th Cir. 2013); *see also Heil*

*Valley Ranch*, 784 P.2d at 785.  Here, again, the Court finds that the exculpatory

provisions of the Participation Agreement unambiguously reflect the parties' intent to

extinguish liability for Plaintiffs' type of claims.

Plaintiffs also allege they were injured when Weber lost control of the dogsled

Sandra and Holly Sturm were on, causing it to careen into a tree.  (ECF No. 5 at 2 ¶¶ 8–

9.)  However, Plaintiff "expressly agree[d] and promise[d] to accept and assume all of

the risks existing" in the dogsled ride, including "collisions with other sleds and/or

manmade and natural objects such as . . . trees."[5]  (ECF No. 31-1 at 3.)  Plaintiff alleges

Krabloonik failed to install a braking system to help mushers control the speed of

dogsleds (ECF No. 5 at 9 ¶ 42), but Plaintiffs expressly waived all "**claims which allege**

---

[4] Plaintiffs stress that Krabloonik was on notice from prior incidents that certain risks might materialize.  (*See, e.g.*, ECF No. 32 at 18) ("[In the Participation Agreement" there is a complete lack of discussion on numerous specific safety risks which Krabloonik was well aware of prior to the incident.").)

[5] Plaintiff argues that this provision is not specific enough to effectively waive liability because it indicates that losing control of dogs, rather than mushers falling off the dogsled, can lead to collisions with trees.  (ECF No. 32 at 18–19.)  The Court disagrees.  The portion of the Participation Agreement containing this phrase is merely a set of examples, and not an exhaustive, itemized list of potential harms being disclaimed.  The Participation Agreement provides that claims arising from collisions with objects resulting in injury are among the types of claims the parties intended to extinguish.  Under *Jones* and *Chadwick,* this is enough.

**negligent acts or omissions**" by Defendants.  (ECF No. 31-1 at 3 (emphasis in original).)  Plaintiffs allege Weber lost control due to icy conditions and because the dogsled hit a rut (*see* ECF No. 5 at 3 ¶ 11); however, among the risks Plaintiffs agreed to accept and assume was the possibility that Weber might "misjudge the weather or other environmental conditions" and, again, they waived all claims alleging negligence.  (ECF No. 31-1.)  Thus, it is irrefutable that the Participation Agreement reflects an intent of the parties to extinguish liability for Plaintiffs' type of claims, and that Plaintiffs' alleged injuries are the type of injuries contemplated by the Participation Agreement.

For all these reasons, the Court finds that all four of the *Jones* factors are satisfied and that the exculpatory provisions of Participation Agreement are valid and enforceable as a matter of law.  *See Anderson v. Eby*, 998 F.2d 858, 862 (10th Cir. 1993) ("If the plain language of the waiver is clear and unambiguous, it is enforced as a matter of law.").  In addition, the Court finds Plaintiffs' claims fall within the scope of the enforceable Participation Agreement.  Accordingly, dismissal of Sandra Stum's claims, other than her Second Claim for Relief, is appropriate.

## IV.  CONCLUSION

Since the Construed Motion was briefed, discovery in this case has closed.  In this Order the Court has considered and ruled on the Construed Motion solely in light of the pleading requirements of Rule 12(b)(6).  As a result, the parties have not yet had the opportunity to fully brief the question, as it regards the claims not dismissed by the terms of this Order, of whether there are no genuine issues of material fact entitling the movant under Rule 56 to judgment as a matter of law.  Therefore, the provisions of WJM Revised Practice Standards III.F.2 notwithstanding, the Court will grant

Defendants leave to file a renewed motion under Rule 56 addressing all evidence in the record through the close of discovery, and directed solely to the remaining claims in this case.

For the reasons set forth above, the Court ORDERS as follows:

1.      Defendants' Construed Motion to Dismiss (ECF No. 31) is GRANTED IN PART and DENIED IN PART as set forth above;

2.      Defendants are granted leave to file a renewed motion for summary judgment by no later than **July 15, 2022**;

3.      Plaintiffs shall file their response to Defendants' motion for summary judgment, if any, by no later than **August 5, 2022**; and

4.      Defendants shall file their reply in support of their renewed motion, if any, by no later than **August 19, 2022.**

Dated this 16th day of June, 2022.

BY THE COURT:

William J. Martínez
United States District Judge

13